UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:08-CV-72-R

GENEAL WARF and GLEN GUPTON,                                              PLAINTIFFS
Individually and on behalf of the class of
542 disenfranchised Green County,
Kentucky absentee voters

v.

BOARD OF ELECTIONS OF GREEN COUNTY,
KENTUCKY, et al.                                                          DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon Plaintiffs' Motion for Preliminary Injunction (Docket #24). Defendants Board of Elections of Green County, Kentucky and Timothy Stumph have responded (Docket #30) and filed a separate Motion for Summary Judgment (Docket #29). Intervening Defendant Billy Joe Lowe has responded (Docket #28). Plaintiffs have replied (Docket #35) and responded to Defendants' Motion for Summary Judgment (Docket #34). Defendant Carolyn Scott has responded to Defendants' Motion for Summary Judgment (Docket #37). Defendants have replied (Docket #38). These matters are now ripe for adjudication. For the following reasons, Plaintiffs' Motion for Preliminary Injunction is DENIED and Defendants' Motion for Summary Judgment is GRANTED.

## BACKGROUND

This matter arises from an election dispute over the office of Green County Court Clerk. On November 7, 2006, a general election was held in Green County, Kentucky. The incumbent, Carolyn Scott ("Scott"), was the Democratic candidate fo court clerk. Billy Joe Lowe ("Lowe") was the Republican challenger.

After all votes were cast and the polls closed, the results of the election were as follows:

|       | Machine Total | Absentee Total | Total Votes |
|-------|---------------|----------------|-------------|
| Scott | 2,172         | 364            | 2,536       |
| Lowe  | 2,207         | 178            | 2,385       |

The Board of Elections of Green County ("Board of Elections") certified Scott the winner of the election. Lowe won the machine voting by a margin of 35 votes; however, with the addition of the absentee votes, Scott prevailed in total number of votes cast by a margin of 151 votes.

Thereafter, Lowe filed a lawsuit in Green Circuit Court contesting the election results. Lowe claimed that Scott improperly handled the election in her role as incumbent county clerk and that her conduct resulted in multiple voting irregularities. Arguing that the absentee ballots were tainted by voting irregularities, Lowe requested that the state court declare them void.

On June 2, 2007, the Honorable William T. Cain, Special Judge of Green Circuit Court, issued an opinion declaring all 542 absentee ballots void, thereby making Lowe the successful candidate for court clerk. Judge Cain determined that Scott's conduct resulted in two election irregularities that tainted the entirety of the absentee voting process. Specifically, Judge Cain found that (1) Scott violated KRS § 117.085(2) when she used county funds to promote her own campaign by mailing absentee ballot applications (not the absentee ballots themselves) to voters with "Re-elect Carolyn Scott Clerk" stickers on the envelopes, and (2) "Scott improperly used her office by placing the absentee voting machine within her personal office, affording her the powerful opportunity to influence potential voters as they made use of the machine." Given the questionable integrity of the absentee ballots, Judge Cain concluded that the proper remedy was to declare them void.

Scott filed an appeal with the Court of Appeals of Kentucky and executed a supersedeas bond to remain in office throughout the appeal. However, the Court of Appeals dismissed her appeal as untimely filed. Scott then sought discretionary review from the Kentucky Supreme Court. Her petition was denied on December 10, 2008.

On May 12, 2008, Plaintiffs Geneal Warf and Glen Gupton, individually and on behalf all 542 absentee ballot voters, filed the present action under 42 U.S.C. § 1983 alleging that Judge Cain's judgment disenfranchised their votes in violation of the Fourteenth Amendment. Plaintiffs are residents and registered voters of Green County, Kentucky who cast absentee ballots in the November 7, 2006 election for Green County Court Clerk and claim that no irregularities took place. They request relief in the form of nominal damages, a preliminary injunction, and the entry of a final judgment declaring and ordering all 542 absentee ballots be counted.

## ANALYSIS

### I. Summary Judgment

Defendants Board of Elections and Sheriff Timothy Stumph now move for summary judgment. Defendant Carolyn Scott opposes the motion and argues on behalf of Plaintiffs.

**A. Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

### B. Abstention

Defendants argue that the Court should abstain from deciding this case under the *Burford* abstention doctrine. *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). "The *Burford* doctrine provides that where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Adrian Energy Associates v. Michigan Public Service Com'n*, 481 F.3d 414, 423 (6th

Cir. 2007) (internal citations omitted).

*Burford* abstention is inappropriate in this case for a number of reasons. First, *Burford* abstention represents extraordinary relief and should be applied narrowly. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996). Second, this case does not threaten to undermine all or substantially all of Kentucky's election process or its resolution of election disputes. *See Siegel v. LePore*, 234 F.3d 1163, 1173 (11th Cir. 2000). Rather, this case involves a discreet inquiry into whether Judge Cain's decision to void the absentee ballots was in conformity with Kentucky election law and the Constitution. Finally, *Burford* abstention should be denied where constitutional violations are alleged. *G & V Lounge, Inc. v. Michigan Liquor Control Com'n*, 23 F.3d 1071, 1077 (6th Cir. 1994) ("federal courts are an appropriate forum for the redress of constitutional violations, regardless of the adequacy of state courts as an alternative forum"); *Middle South Energy, Inc. v. Arkansas Public Serv. Com'n*, 772 F.2d 404, 417 (8th Cir. 1985), cert. denied, 474 U.S. 1102 (1986) (*Burford* abstention is inappropriate when federal law or the Constitution place the regulation at issue beyond the state's authority). For these reasons, *Burford* abstention does not present a bar for the exercise of jurisdiction in this case.

### C. Constitutional Violation

In their complaint, Plaintiffs allege that Judge Cain's decision to void all absentee ballots in the election for Green County Court Clerk disenfranchised their votes in violation of the Fourteenth Amendment's Due Process Clause. In their motion for summary judgment, Defendants contend that Plaintiffs cannot show an injury rising to the level of a constitutional violation. Plaintiffs cannot show a constitutional violation, Defendants argue, because Judge Cain's opinion was based on indisputable evidence that Scott violated two state election laws

pertaining to absentee voting and that, having found that two irregularities occurred, Judge Cain followed Kentucky law in voiding all 542 absentee ballots.  In response, Plaintiffs argue that federal intervention is necessary because Judge Cain's opinion clearly departs from Kentucky statutory and case law, thereby rising to the level of a constitutional violation.

The right to vote is a fundamental right, "preservative of all rights."  *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).  "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined."  *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).   Accordingly, alleged infringements of the right to vote are carefully scrutinized.  *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964).

The states regulate their own elections.  *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  "Because the states traditionally have authority over their own elections and because the Constitution contemplates that authority, courts 'have long recognized that not every state election dispute implicates federal constitutional rights.'" *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005) (quoting *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir. 1992)); *Roe v. State of Alabama*, 43 F.3d 574, 580 (11th Cir. 1995).

While the Constitution affords federal courts the power to intervene and invalidate local elections, only exceptional circumstances warrant the exercise of that power.  *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1987); *Roe*, 43 F.3d at 580.  In *League of Women Voters of Ohio v. Brunner*, the Sixth Circuit held that the "Due Process Clause is implicated, and § 1983 relief appropriate, in the exceptional case where a state's voting system is fundamentally unfair."  548 F.3d 463, 478 (6th Cir. 2008) (citing *Griffin*, 570 F.2d at 1078-79).  *Brunner* involved a

constitutional challenge to Ohio's overall voting system. The Sixth Circuit explained that federal intervention may be appropriate in this case where "'the fairness of official terms and procedures under which the election was conducted'" are challenged. *Id.* (quoting *Griffin*, 570 F.2d at 1078). However, "federal courts should not be 'asked to count and validate ballots and enter into the details of the administration of the election.'" *Id.* Substantive due process is implicated in instances where "non-uniform rules, standards, and procedures" are utilized to disenfranchise and dilute the right to vote. *Id.* at 478.

Other circuit courts agree that a federal court's scrutiny of local election contests is limited. "In general, garden variety election irregularities do not violate the Due Process Clause, even if they control the outcome of the vote or election." *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998). Examples of garden variety irregularities include malfunctioning of voting machines, *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975), human error resulting in miscounting of votes and delay in the arrival of voting machines, *Gold v. Feinberg*, 101 F.3d 796, 801-02 (2d Cir. 1996). *See Shannon*, 394 F.3d at 96 (collecting cases). In contrast, contest results that depart from previous state practice have been found to constitute fundamental unfairness. *See Roe*, 43 F.3d at 580-81 (intervening where failure to exclude contested absentee ballots constituted a post-election departure from previous state practice); *Griffin*, 570 F.2d at 1079 (intervening where state court disrupted seven year practice of voting by absentee and shut-in ballots).

Whether or not federal intervention is appropriate in this case rests on a determination of whether Judge Cain's opinion utilized "non-uniform rules, standards, and procedures" to void the 542 absentee ballots. Defendants argue that it is the practice of Kentucky courts to void

7

absentee ballots when absentee voting irregularities are found. Plaintiffs counter that Judge Cain's opinion is at odds with Kentucky statutory and case law.

Under Kentucky law, a candidate for county office can contest the election of a successful candidate by filing a petition in Circuit Court. KRS § 120.155. The contest shall proceed as an equity action and "the judge shall proceed to a trial of the cause without delay." KRS § 120.165 (1). Where the record as a whole demonstrates fraud, intimidation, bribery or violence in the conduct of the election, the election may be set aside by the Circuit Court. KRS § 120.165(4); *see also McClendon v. Hodges*, 272 S.W.3d 188 (Ky. 2008) (setting aside mayoral election based on trial court's finding of "pervasive" fraud).

Judge Cain's opinion was based on two election irregularities to which Scott admitted in her deposition testimony. Judge Cain did not make an findings of fraud, intimidation, bribery or violence. The first irregularity Judge Cain found was Scott's placement of stickers stating "Re-elect Carolyn Scott Clerk" on the envelopes of absentee ballot applications mailed to voters between September 19 and October 9, 2006. Scott discontinued the practice on October 9, 2006 after she received a telephone call from the Kentucky Attorney General's office advising her that her use of the stickers was, at a minimum, inappropriate. Judge Cain determined that these actions amounted to a violation of KRS § 117.085(2). Section 117.085(2) states, in pertinent part, "[t]he absentee ballot application form shall be in the form prescribed by the State Board of Elections."

The second irregularity Judge Cain found was Scott's placement of the absentee voting machine within her personal office. Although Judge Cain's opinion noted that Scott's position as the incumbent clerk put her "in an extremely high position of trust and responsibility," *Crowe*

*v. Emmert*, 305 S.W.2d 272, 273-73 (Ky. Ct. App. 1957), it failed to identify any statute or regulation that her conduct violated. Of its own accord, the Court notes that the State Board of Elections requires that "the county clerk shall establish a special area *to be used solely for the purpose* of allowing those voters who qualify" for absentee voting "to secretly cast absentee ballots" and "[i]f the county clerk's office does not have sufficient physical space to designate an area away from the normal activities of the office, the booth or area may be located outside the physical limitations of the county clerk's office, if the area is capable of direct supervision by the county clerk or his or her staff while the area is utilized for the purpose of casting absentee ballots." 31 Ky. Admin. Regs. 4:040(1), (3) (emphasis added).

Kentucky case law supports Judge Cain's opinion. In *Arnett v. Hensley*, the Court of Appeals of Kentucky considered an election contest for county court clerk in which the absentee ballots determined the outcome of the election. 425 S.W.2d 546 (Ky. Ct. App. 1968). The record before the trial court revealed numerous irregularities regarding the absentee voting. *Id.* at 550-52. For example, many of the absentee ballots bore illegal notary work and the manner of tabulating them was contrary to state proscribed procedures. *Id.* at 552. Given the "gross irregularities in the handling of the absentee ballots," the court determined that the trial court was correct in its decision to void all the absentee ballots cast and affirmed the lower court's decision. *Id.* at 553.

Likewise, in *Parrigin v. Sawyer*, the unsuccessful candidate for county clerk contested the election results after the incumbent clerk was declared the winner. 457 S.W.2d 505, 505 (Ky. Ct. App. 1970). The incumbent clerk won the election by only four votes, thirty-four of which came from absentee ballots. *Id.* The trial court found that absentee voting irregularities

9

occurred when the incumbent clerk sent out absentee voting instructions on his official letterhead and the procedures for keeping the absentee ballot box locked were not followed; however, the court did not void the absentee ballots. *Id.* at 506. The Court of Appeals of Kentucky reversed, stating that "the right to vote by absentee ballot is a special privilege granted by the legislature. The privilege is granted under the specific condition that all the procedures set out in the legislative act be complied with. Irregularities in these procedures cannot be tolerated, especially when they are committed by a candidate and obviously inure to his advantage." *Id.* at 508. The court's order to certify the unsuccessful candidate as the winner effectively voided the absentee ballots. *Id.*

Plaintiffs seeks to distinguish the above cases by arguing that Judge Cain's opinion improperly placed the burden of proof on Scott to show that the absentee voting was conducted legally. As the contestant, Plaintiffs argue that Lowe has the burden of proof to show that irregularities occurred. However, the cases cited by Plaintiffs in support of this argument pertain to fraud violations under KRS § 120.165(4) and Kentucky's Corrupt Practices Act, KRS § 121.055, which are not applicable in this case. *See Gregory v. Stubblefield*, 316 S.W.2d 689, 691 (Ky. Ct. App. 1958) (fraud); *Lewis v. Sizemore*, 118 S.W.2d 133, 136 (Ky. Ct. App. 1938) (Corrupt Practices Act); *Little v. Alexander*, 80 S.W.2d 32, 34 (Ky. Ct. App. 1934) (fraud); *Napier v. Cornett*, 68 S.W. 1076 (Ky. Ct. App. 1902) (fraud and corrupt practices).

Furthermore, in *Crowe v. Emmert*, the Court of Appeals of Kentucky explicitly placed the burden of proof on the incumbent clerk in election contests for county clerk involving absentee ballot irregularities. 305 S.W.2d 272, 274 (Ky. Ct. App. 1957). The court explained that "an incumbent county clerk, who is a candidate for office, finds himself in an extremely

high position of trust and responsibility." *Id.* at 273-74. Therefore,

> We think there is even more reason in the case before us than there was in the Rayburn case [267 S.W.2d 720 (Ky. Ct. App. 1954)] to require those in charge of absentee ballots . . . to show that the balloting was conducted legally, and that all requirements of the law to insure its fairness, at least, were met substantially. Under the circumstances, it was the duty of the [incumbent clerk] to go forward with the proof, and the trial court properly held so.

*Id.* at 274.

Plaintiffs are correct that the later decisions of *Arnett* and *Parrigin* do not address the burden of proof. However, both decisions do cite *Crowe*. Furthermore, failure to address the issue does not necessitate, as Plaintiffs suggest, that the courts placed the burden of proof on the contestant instead of the contestee in those cases.

Finally, Plaintiffs rely on KRS § 120.165(2) to argue that the contestant has burden of proof in election contests. Section 120.165(2) states the order of proof in an election contest;[1] it does not state who holds the burden of proof. The fact that the contestant must complete his evidence before the contestee does not necessitate that the contestant also bears the burden of proof.

Having reviewed the applicable Kentucky law, the Court is convinced that Judge Cain's opinion did not stray from past Kentucky precedent and that the burden of proof was properly placed on the incumbent clerk. Plaintiffs point to no Kentucky statutes or case law that suggest that Judge Cain's opinion relied on "non-uniform rules, standards, and procedures." Plaintiffs

---

[1]Section 120.165(2) states, "The evidence in chief for the contestant shall be completed within thirty (30) days after service of summons; the evidence for the contestee shall be completed within twenty-five (25) days after filing of answer, and evidence for contestant in rebuttal shall be completed within seven (7) days after the contestee has concluded; provided that for cause the court may grant a reasonable extension of time to either party."

make additional arguments that go to the merits of Judge Cain's opinion, but the Court will not address them where a constitutional violation has not been established. The Court finds no indication that Judge Cain's opinion was fundamentally unfair. Therefore, the Court declines to intervene in this matter.

**D. Laches**

Defendants argue that because Plaintiffs had an opportunity to intervene in the state election contest and failed to do so, their claims should now be dismissed under the equitable doctrine of laches. Plaintiffs respond that under KRS § 120.155 only candidates for election can challenge election results.[2] Because Plaintiffs were not candidates, they argue that they were unable to intervene in the election contest.

The Court notes at the outset that Plaintiffs' argument is without merit. Kentucky Revised Statute § 120.155 does not afford Plaintiffs any legal protection. The issue before the Court is not whether Plaintiffs could have been parties to the original election contest. Rather, the issue before the Court is whether, after Judge Cain's opinion voided Plaintiffs' absentee ballots, thereby allegedly causing them injury, Plaintiffs unreasonably delayed in filing the present lawsuit.

"Where a plaintiff seeks solely equitable relief, his action may be barred by the equitable

---

[2] Section 120.155 provides, in pertinent part, "Any candidate for election to any state, county, district or city office (except the office of Governor, Lieutenant Governor, member of the General Assembly, and those city offices as to which there are other provisions made by law for determining contest elections), for whom a number of votes was cast equal to not less than twenty-five percent (25%) of the number of votes cast for the successful candidate for the office, may contest the election of the successful candidate, by filing a petition in the Circuit Court of the county where the contestee resides . . ." KRS § 120.155. Plaintiffs point to the word "candidate" in the statute to argue that they could not have been parties to the election contest.

12

defense of laches if (1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant was prejudiced by this delay." *American Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 647 (6th Cir. 2004) (citing *Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000)). Judge Cain's opinion was issued on June 2, 2007. The Court of Appeals dismissed Scott's appeal as untimely filed on August, 1, 2007. In November 2007, Scott filed a motion for discretionary review with the Kentucky Supreme Court. Her petition was denied on December 10, 2008. Plaintiffs filed their action in federal court on May 12, 2008, approximately ten months after the Court of Appeals dismissed Scott's appeal. While Defendants are correct in their assertion that Plaintiffs could have filed their action considerably earlier, Defendants offer no evidence that they were prejudiced by Plaintiffs' delay. Indeed, because Scott remained in office pending the Kentucky Supreme Court's discretionary review decision, the filing of Plaintiffs' lawsuit had no impact on the status quo of Defendants. Accordingly, the Court will not apply the equitable doctrine of laches.

## II. Preliminary Injunction

When considering a motion for preliminary injunction, a district court must balance four factors:

(1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable injury without the injunction;

(3) whether issuance of the injunction would cause substantial harm to others; and

(4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.

13

2007). The district judge "is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Id.* (quoting *Jones v. City of Monroe, MI*, 341 F.3d 474, 476 (6th Cir. 2003)).

"In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success. However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). "Although no one factor is controlling [in preliminary injunction analysis], a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir.1997)).

For the reasons stated above, the Court has already determined that Judge Cain's opinion was not fundamentally unfair, making federal intervention in this case is unwarranted. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Plaintiffs cannot establish a likelihood of success on the merits where the Court has determined that Defendants are entitled to summary judgment as a matter of law. *See Wonderland Shopping Center Venture Ltd. Partnership v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1097 (6th Cir. 2001) (holding that plaintiff cannot show likelihood of success on the merits where summary judgment for defendant is warranted).

Certainly, Plaintiffs will suffer irreparable injury if Judge Cain's opinion stands. Their

absentee ballots will be considered void and not counted in favor of either candidate. The issuance of an injunction would also clearly cause substantial harm to Intervening Defendant Lowe since he would be denied the office of court clerk. What is less certain is the impact an injunction would have on Defendant Board of Elections. On the one hand, ensuring that all votes are counted could be said uphold the integrity of the Board of Elections, as Plaintiffs suggest, while on the other, the prolonged continuation of this litigation could be substantially harmful to the Board's integrity, as Defendants argue. Furthermore, it is unclear the impact this dispute has had on the community at large. It has been ongoing for almost two years, embroiling local resources and impugning the election process, with no winner yet certified. Given these wavering considerations, plus the compelling factor that Plaintiffs cannot show that they are likely to succeed on the merits, the Court believes that the issuance of a preliminary injunction would be inappropriate in this case. Accordingly, the Court finds that Plaintiffs are not entitled to a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED**.

An appropriate order shall issue.